# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| KELLY WAYNE HANCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13-2656-STA-tmp |
| | ) | |
| BNSF RAILWAY COMPANY d/b/a | ) | |
| BURLINGTON NORTHERN & | ) | |
| SANTA FE RAILWAY CO., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Exercising jurisdiction under 28 U.S.C. § 1331, the Court tried this case without a jury from April 20 to April 21, 2015. Plaintiff Kelly Wayne Hance alleged that Defendant BNSF Railway Company ("BNSF") violated the Uniformed Services Employment and Reemployment Rights Act of 1994[1] ("USERRA") because Hance's prior protected activity was a motivating factor in BNSF's decision not to hire Hance. Federal Rule of Civil Procedure 52 requires that "[i]n an action tried on the facts without a jury . . . , the court must find the facts specially and state its conclusions of law separately."[2] For the reasons stated below, the Court holds that BNSF denied Hance employment for legitimate, nondiscriminatory reasons.

---

[1] 38 U.S.C. §§ 4301–4335.

[2] Fed. R. Civ. P. 52(a)(1).

**FINDINGS OF FACT**

I. **BNSF Hiring Event**

Kelly Hance was a member of the Tennessee Army National Guard at all times relevant to this case. (Pretrial Order, Stipulated Facts ¶ 7(a), ECF No. 84). On January 23, 2013, Hance filled out an application for a Conductor Trainee position at BNSF's train yard in Birmingham, Alabama. (*Id.* ¶ 7(b)). After Hance applied, he received a letter instructing him to complete an online assessment, which he passed. (*Id.* ¶ 7(c)). BNSF then invited Hance to one of its hiring events in Birmingham on February 7, 2013. (*Id.* ¶ 7(d)). At the event, Maxine Kazen, a third-party human-resources consultant contracted by BNSF to oversee some of its hiring events, gave a PowerPoint presentation that included an overview of BNSF and its history. (*Id.* ¶ 7(e)–(g)). Kazen also explained to the applicants the potential consequence of misstating work history or anything else on the application: termination of any conditional offer given. (Tr. 192:21–193:12). After Kazen's presentation, the candidates took a 90-minute aptitude test, which Hance passed. (Pretrial Order, Stipulated Facts ¶ 7(h)–(j)). Passing the test progressed Hance to the interview stage, and that same day, Kazen and BNSF Training Coordinator Michael Snow interviewed Hance, with Kazen leading the questioning. (*Id.* ¶ 7(l)). Kazen questioned Hance about his work experience in light of statements in his cover letter, resume, and application. Hance's representations about his prior work history with Norfolk Southern Railway and BNSF's subsequent decision not to hire him are the subjects of this lawsuit.

II. **Hance's Previous Employment with Norfolk Southern**

Hance started as a conductor trainee with a separate railroad company, Norfolk Southern Railway, in May 1999. (Tr. 62:1). He did not conduct any train operations for Norfolk Southern after January 18, 2001, and Norfolk Southern discharged him on August 23, 2001. (Tr. 64:12–

15). Hance exhausted appeals under a collective bargaining agreement and filed a grievance regarding his termination to the Public Law Board. He then filed a lawsuit in the Eastern District of Tennessee in 2004, alleging that Norfolk Southern fired him in violation of the Railway Labor Act and USERRA.[3] (Tr. 31:19–23). The Eastern District of Tennessee held that Norfolk Southern violated USERRA in dismissing Hance from employment. In 2009, the Sixth Circuit upheld the lower court's finding of liability under USERRA. *See Hance v. Norfolk S. Ry.*, 571 F.3d 511, 523 (6th Cir. 2011). Although a court later ordered reinstatement, Hance waived reinstatement and agreed to a monetary settlement with Norfolk Southern. (Tr. 71:11–72:2). During these years of litigation, Hance was not employed with Norfolk Southern. Thus, despite prevailing in his previous lawsuit, Hance had only gained—at most—about one and a half years of experience while working at Norfolk Southern.

### III. The Interview

BNSF interviewers evaluated each candidate in six areas of competence and graded each candidate as "acceptable" or "not acceptable." (Tr. 230; Scheduled Employee Selection System, Ex. 20). Hance received a not-acceptable grade on two of the six areas: "work ethic and conscientiousness" and "communication." (Ex. 20). The not-acceptable grade on "work ethic and conscientiousness" mandated an overall conclusion of not acceptable and a decision not to hire. (*Id.*). Before the interview, Kazen and Snow had already reviewed Hance's application, cover letter, and resume. Hance's cover letter begins, "As a talented Railroad professional, I have over 10 years of experience in implementing solid strategies that have consistently provided reliable operations while promoting safety." (Ex. 9). His resume indicates that he worked for

---

[3] Hance testified that the Sixth Circuit's opinion in his case correctly stated facts related to his employment. Tr. 31:19–23. Coincidentally, the Sixth Circuit's opinion in Hance's case against Norfolk Southern is authoritative precedent on USERRA claims. *See Hance v. Norfolk S. Ry.*, 571 F.3d 511 (6th Cir. 2009).

Norfolk Southern from 1999 to 2009. (Ex. 9). On his BNSF application, Hance typed that he "Resigned with Notice" in a section asking for his "Reason for Leaving."[4] (Ex. 2).

During the interview, Kazen first went through the work experience that Hance listed on his application.[5] (Tr. 125:8–20). She testified that Hance "talk[ed] extensively about his work on the [Norfolk Southern]" and about how he "had been a conductor trainee" until "he left in '09." (Tr. 133:12–16). Kazen testified that Hance told her and Snow that "[h]e had no safety violations; and he talked about it again with a great deal of pride, his railroad experience. He said he had significant railroad experience and that he would consider with BNSF a management position, that he wanted to continue a railroad career." (Tr. 144:3–8). When asked, Hance initially answered that the information listed on his application was correct: that he started with Norfolk Southern in 1999 and resigned with notice in 2009. (Tr. 127:15–21). But when later asked a standard BNSF question—whether he had ever been fired from a job—Hance answered that he was terminated unlawfully from Norfolk Southern. (Tr. 132:24–134:3). Hance handed Kazen a copy of the Sixth Circuit's decision in his favor and attempted to explain. (Tr. 145:3–9). Kazen testified that she did not read the opinion, but instead asked why Hance was not reinstated

---

[4] The Plaintiff initially asserted that the online application only allowed him to choose from several different options as "reason for leaving"—a drop-down box. At trial, however, both Kazen and BNSF Manager of Military Staffing and Recruiting John Wesley testified that the "reason for leaving" question on the first page of the application could only be answered with free text—that is, Hance had to physically type "Resigned with Notice." Tr. 167:14–24, 213:2–17, 298:15–17. Regardless, that Kazen was curious as to his reason for leaving after gaining 10 years' seniority is unsurprising. Moreover, it does not lead to an inference that retaliation was a motivating factor.

[5] Although not dispositive, Hance wrote on a subsequent application a short description of why he left Norfolk Southern: "Norfolk Southern Railway Company found in violation of law 38 U.S.C. of the Uniform Service Employment and Reemployment Rights Act (USERRA)." *See* Application to Ala. & Tenn. Ry., Ex. 10. Had Hance written this very same statement on his BNSF application, Kazen and Snow might not have been confused as to why Hance would write that he "Resigned with Notice."

if the court ordered him reinstated, as Hance had told her. (Tr. 248:24–249:14). Kazen stated that

> at that point in time, I went back to the following question; and I asked him, "Mr. Hance, you've told us that you had ten years of experience. That's ten years of seniority, and seniority on the railroad is a big deal. It means a lot to have seniority. So if [Norfolk Southern] reinstated you, then, you know, why did you resign?" I didn't know at that point that he hadn't resigned with notice. . . .

(Tr. 145:1–8). When Hance began describing the lengthy legal process, Kazen realized that he could not have gained "anywhere close to ten years of experience as he stated in his resume and his application." (Tr. 251:4–6).

After reading Hance's cover letter—"I have ten years of experience"—and believing that it meant Hance had "boots on the ground" and was "someone who's actually in the yard, on the trains, working, performing, supervising crews," Kazen now believed Hance had lied about his work experience. (Tr. 210:11–21; Resume, Ex. 10). BNSF valued trust and honesty in conductor trainees because of a conductor's responsibility for care of cargo. (Tr. 203:1–11). Thus, she graded Hance "not acceptable" for "work ethic and conscientiousness." (Tr. 132:18–20). She also gave Hance a "not acceptable" grade on "communication" because of his lack of eye contact. (Tr. 146:17–23; 147:14–23).

Kazen testified that the same night, she scanned the Sixth Circuit opinion that Hance gave her. But she affirmed that her "decision was based on the fact that he misrepresented initially in his application what he had told us, and he misrepresented himself in a good portion of the interview. It was quite apparent from both his body language and his responses that he wasn't forthcoming." (Tr. 139:4–12). At trial, Hance's counsel repeatedly referred to Hance's status as listed on the U.S. Railroad Retirement Board's form BA-6, which gives Hance

5

retirement credits for the years he would have worked had Norfolk Southern not illegally discriminated against him. (*See* 2009 Certificate of Service Months and Compensation, Ex. 3). In other words, Hance used the BA-6 at trial to show that he was being truthful when he represented that he had 10 years' experience at Norfolk Southern. (Tr. 35:21–36:3). But Kazen testified that "hav[ing] a form that says you've been credited with certain months of service, that doesn't mean you actually worked at the railroad for that period of time." (Tr. 135:6–10). More importantly, Hance never mentioned his BA-6 credit during the interview. And if he did, Kazen "probably would have told him that in [her] experience the BA-6 would not be evidence of actual experience." (Tr. 229:4–6).

Hance also attempted to cast doubt on BNSF's proffered motivation in refusing to hire him by showing that different BNSF actors misstated their involvement with the decision. But Kazen testified persuasively that she made hiring decisions the night of the event:

> It was my decision. I had the overall human resources responsibility for making that decision[.]
> And consistent with what I always do when I'm working for another client, I ran it by the—ran actually—I just—the whole process I cover with the Regional HR Director and the director for the territory [Dane Freshour and Don Anderson] at the end of the day of any hiring session.

(Tr. 148:13–20). From the entire record before the Court, it is clear that Kazen was the real decision maker. She was the only interviewer besides Michael Snow. Freshour and Anderson rubberstamped her decision in a post-hiring-event telephone conversation in which Kazen broadly described the happenings of the day. (Tr. 151:18–153:8). Thus, although Freshour and Anderson were "involved" in the decision, Kazen was the decision maker; they simply affirmed her decision. (Tr. 180:4–181:3; 263:23–264:9). Snow, who testified that he provided "input"

6

regarding the decision, did not have any decision-making authority. (Tr. 190:25–191:13; 309:23–310:6).

## CONCLUSIONS OF LAW

Congress enacted USERRA "'to prohibit discrimination against persons because of their service in the uniformed services.'"[6] USERRA not only prohibits general discrimination based on military service, but also retaliation: "An employer may not discriminate in employment or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter."[7] It is undisputed that prior to his application with BNSF, Hance took action to enforce a protection afforded him under USERRA.

## I. USERRA Burden Shifting

If Hance's previous action against Norfolk Southern was a "motivating factor" in the employer's action, then BNSF engaged in a prohibited activity under USERRA unless it can show that it would have denied Hance employment in the absence of his prior lawsuit.[8] Hance must first establish a prima facie case of retaliation. The Sixth Circuit has adopted the Federal Circuit's factors from which discriminatory motivation may be inferred at the prima facie stage: "inconsistencies between the proffered reason and other actions of the employer" and "disparate treatment of certain employees compared to other employees with similar work records or

---

[6] *Hance v. Norfolk S. Ry.*, 571 F.3d 511, 517 (quoting *Curby v. Archon*, 216 F.3d 549, 556 (6th Cir. 2000)).

[7] 38 U.S.C. § 4311(b).

[8] *See* 38 U.S.C. § 4311(c)(2).

7

offenses," among others.[9] If Hance establishes a prima facie case of retaliation, then the burden shifts to BNSF, which must "'prove the affirmative defense [by a preponderance of the evidence] that legitimate reasons, standing alone, would have induced the employer to take the same adverse action.'"[10] As discussed below, while Hance established a prima facie case of retaliation based on circumstantial evidence, BNSF has proven, by a preponderance of the evidence, that it decided not to hire Hance for a valid, nondiscriminatory reason.

**A. Prima Facie Case**

Hance established a prima facie case by showing BNSF's varied answers on the question of why it did not hire Hance. At trial, Hance pointed out differences among Kazen's stated reason for deciding not to hire Hance, BNSF's form rejection letter sent to Hance, and BNSF's response to an interrogatory. Kazen testified at trial that she did not extend Hance a conditional offer because he mischaracterized his years of service with Norfolk Southern and the reason for his separation of employment with Norfolk Southern.[11] Kazen was generally dissatisfied with Hance's omission on the application and his wavering explanation of his work experience. Nevertheless, BNSF's form rejection letter indicated that it considered factors such as "work

---

[9] *See Hance*, 571 F.3d at 518 (*Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001)).

[10] *Id.* (quoting *Sheehan*, 240 F.3d at 1014).

[11] Tr. 155:11–23, 260:11–21. BNSF presented testimony describing BNSF's hiring process after an event like the one in question. A successful applicant would receive a "conditional offer," contingent upon a clear background check. That background check would have included researching Hance's prior employment. Kazen described this process before interviews at the hiring event. Thus, BNSF claims that Hance's application would have been flagged by a third-party background-checking agency and any conditional offer would have been revoked because of his misrepresentation of 10 years' experience. The Court need not reach this argument, as it holds that Hance's prior protected activity was not a motivating factor in Kazen's decision not to hire him.

8

history, prior related training and education, interpersonal skills, . . . work approach and style, and oral communication skills."[12] BNSF then answered an interrogatory by stating that "Plaintiff was not hired because his in-person interview revealed that Plaintiff's skills qualifications and experience did not match [BNSF's] needs. [BNSF] considered factors such as Plaintiff's work history, prior related training and education, work approach and style and communication skills."[13] These inconsistent answers are enough to trigger a burden-shift to BNSF. Nevertheless, BNSF carried its burden at trial by proving that it did not hire Hance for a legitimate, nondiscriminatory reason.

### B. Affirmative Defense

Much like Title VII claims, USERRA claims require a factfinder to analyze why an employer made a decision. Here, BNSF must prove, by a preponderance of the evidence, that it would have taken the same adverse action for legitimate reasons.[14] As set forth above, the Court finds that Maxine Kazen was the central decision maker in rejecting Hance for employment. Furthermore, the Court finds Kazen's testimony credible. Hance's prior lawsuit against Norfolk Southern was not a motivating factor in her decision not to hire Hance. Instead, Kazen took the adverse action for legitimate, nondiscriminatory reasons: she came to distrust Hance when he gave answers to interview questions that seemed contrary to assertions Hance made in his application, resume, and cover letter. Whether Hance intended to mischaracterize his work

---

[12] Rejection Letter, Ex. 22.

[13] Def.'s Responses to Pl.'s Interrog. ¶ 2, Ex. 5.

[14] *Hance*, 571 F.3d at 518 (citing *Sheehan*, 240 F.3d at 1014).

experience is not dispositive.[15]  Put simply, BNSF put forth credible evidence showing that it did not hire Hance because Kazen believed that Hance lied about his work experience and was thus not trustworthy.

Hance's counsel sought to discredit BNSF by emphasizing the word "probe":  Kazen said that she "probed" Hance on his termination from Norfolk Southern, which coincidentally included details of his previous USERRA lawsuit.  But Kazen's "probe" was simply asking more questions when she was unclear—and concerned—about Hance's description of how he left Norfolk Southern:  "What I asked him to tell me about was why he had misrepresented the information he put on his application and the length of service with [Norfolk Southern] Railroad.  That's what I was asking him about, not his USERRA claim at all."[16]  When she first asked Hance why he was no longer working at Norfolk Southern after the supposed 10 years, she had no idea that her question would elicit details of his protected activity.  She only wanted to clarify the applicant's work history.  Surely it is not unreasonable—much less statutorily prohibited—to ask an interviewee detailed questions about his representations on an application for employment.  That Hance's description of his departure elicited mention of his protected conduct—by itself—does not make his prior protected activity a motivating factor in BNSF's decision not to hire him.  Kazen reasonably believed that Hance was lying not just about his departure, but also about his amount of railroad experience.  After he emphasized his experience, she wanted to know more about it.  She then asked him reasonable questions about his departure

---

[15] *See Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1030 (6th Cir. 2010) ("In discrimination cases, this court has adopted a 'modified honest belief' rule which states that 'for an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made.'" (quoting *Wright v. Murray Guard Inc.*, 455 F.3d 702, 708 (6th Cir. 2006))).

[16] Tr. 142:9–18.

from Norfolk Southern once Hance accurately described the situation. Unfortunately for Hance, he did not actually have much railroad experience. Even though Hance did eventually come forward with the true nature of his previous employment, Kazen honestly believed that he was untruthful from the start. Thus, she did not trust Hance to take a position that required trustworthiness. While the BA-6 showed his 10 years of credit for retirement, he did not mention the credit to describe his situation accurately.

## CONCLUSION

The Court finds that Kazen was honestly concerned—and genuinely confused—as to why Hance would leave Norfolk Southern after gaining 10 years of experience and valuable seniority. Kazen's testimony established that BNSF refused to hire Hance because Kazen believed that he mischaracterized his work experience and generally performed poorly in the interview. His prior protected activity was not a motivating factor in the decision. Therefore, judgment shall be entered in favor of the Defendant.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
HON. S. THOMAS ANDERSON
UNTIED STATES DISTRICT COURT

Date: July 15, 2015.